http://www.va.gov/vetapp16/Files4/1630421.txt

Citation Nr: 1630421 
Decision Date: 07/29/16 Archive Date: 08/04/16

DOCKET NO. 09-48 646 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Jackson, Mississippi

THE ISSUE

Entitlement to an initial compensable rating for tinea pedis with toenail onychomycosis.

REPRESENTATION

Veteran represented by: The American Legion

WITNESS AT HEARING ON APPEAL

The Veteran

ATTORNEY FOR THE BOARD

Shauna M. Watkins, Counsel

INTRODUCTION

The Veteran had active service from August 1979 to August 1982. 

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a June 2008 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Jackson, Mississippi, in which the RO granted service connection for tinea pedis with toenail onychomycosis and assigned a zero percent (non-compensable) disability rating effective August 14, 2006. In March 2011, the Veteran testified at a hearing before the undersigned Acting Veterans Law Judge at the RO. A written transcript of this hearing has been associated with the record.

In January 2014, the Board remanded this appeal to the RO via the Appeals Management Center (AMC), in Washington, DC, for further development. The Board also is satisfied as to substantial compliance with its January 2014 remand directives. See Dyment v. West, 13 Vet. App. 141, 146-47 (1999); Stegall v. West, 11 Vet. App. 268 (1998). This included scheduling the Veteran for another VA examination which occurred in March 2014. The remand also directed the AOJ to send the Veteran a letter which provided her with the appropriate release form (VA Form 21-4142) in order to obtain her confidential treatment records from her private physician. The Veteran was sent this letter in January 2014 and all identified treatment records have been obtained. Finally, as directed by the remand, the AOJ readjudicated the Veteran's claim in the May 2014 Supplemental Statement of the Case (SSOC).

This appeal was processed using the VBMS paperless claims processing system. Accordingly, any future consideration of this Veteran's case should take into consideration the existence of this electronic record, in addition to the Veteran's Virtual VA paperless claims file.

FINDINGS OF FACT

1. From August 14, 2006, to March 3, 2008, the tinea pedis with toenail onychomycosis was manifested by pain, numbness, and itching, but has not required systemic therapy for treatment.

2. From March 4, 2008, to March 9, 2013, the tinea pedis with toenail onychomycosis required near-constant systemic therapy.

3. Since March 10, 2013, the tinea pedis with toenail onychomycosis has been manifested by pain, but has not required systemic therapy for treatment.

CONCLUSION OF LAW

The criteria for an initial 10 percent rating from August 14, 2006, to March 3, 2008, an initial 60 percent rating from March 4, 2008, to March 9, 2013, and an initial 10 percent rating thereafter for tinea pedis with toenail onychomycosis have been met. 38 U.S.C.A. § 1155 (West 2014); 38 C.F.R. §§ 4.1, 4.3, 4.7, 4.118, Diagnostic Code (DC) 7813-7804 (effective prior to October 23, 2008).

REASONS AND BASES FOR FINDINGS AND CONCLUSION

VA has a duty to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2015). Upon receipt of a complete or substantially complete application for benefits, VA is required to notify the claimant and his or her representative, if any, of any information, and any medical or lay evidence, that is necessary to substantiate the claim. 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b); Quartuccio v. Principi, 16 Vet. App. 183 (2002). Proper notice from VA must inform the claimant of any information and evidence not of record: (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and, (3) that the claimant is expected to provide. This notice must be provided prior to an initial unfavorable decision on a claim by the Agency of Original Jurisdiction (AOJ). Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006); Pelegrini v. Principi, 18 Vet. App. 112 (2004).

This appeal arises from the Veteran's disagreement with the initial rating assigned following the grant of service connection for tinea pedis with toenail onychomycosis. As such, VA has no further obligation to provide notice under 38 U.S.C.A. § 5103 on this downstream element of the claim. See 38 C.F.R. § 3.159(b)(3)(1) (2015). In so providing, the courts have held that once service connection is granted, the claim is substantiated, further notice as to the "downstream" elements concerning the initial rating and effective date is not required, and any defect in the notice is not prejudicial. See Dingess v. Nicholson, 19 Vet. App. 473, 490-491 (2006); see also Hartman v. Nicholson, 483 F.3d 1311 (Fed. Cir. 2007); Dunlap v. Nicholson, 21 Vet. App. 112 (2007). Thus, because the section 5103 notice letters provided in August 2006 and January 2007 before the grant of service connection for tinea pedis with toenail onychomycosis were legally sufficient, VA's duty to notify in this case is satisfied. See also Goodwin v. Peake, 22 Vet. App. 128 (2008); Dunlap, 21 Vet. App. at 112. 

VA also has a duty to assist the Veteran in the development of the claim. This duty includes assisting the Veteran in the procurement of service treatment records (STRs) and pertinent treatment records and providing an examination when necessary. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159.

Here, the Board finds that all relevant facts have been properly developed and all evidence necessary for equitable resolution of the issue has been obtained. Her STRs and post-service VA and private treatment records have been obtained. The Veteran reported treatment at the Womack Army Medical Center and at the McGuire Clinic. After making attempts to obtain these records, VA was informed that these records were unavailable. The Veteran was informed of the unavailability of these records in a letter dated in October 2007 and given the opportunity to submit copies of her own records. No records were received. The claims file also does not indicate that the Veteran currently receives disability benefits from the Social Security Administration (SSA). The Veteran also reported treatment at A-1 Nail and Foot Care on a weekly basis for nail care and massages. A preliminary review of A-1 Nail and Foot Care online establishes that this facility is a day spa. Records from the day spa have not been obtained and the Board finds that an attempt to obtain medical records from a place that clearly would not have medical records (such as a day spa) is not necessary. There is no indication of any additional relevant evidence which is available but has not been obtained by VA. 

The Veteran also has been afforded VA examinations and the reports of those evaluations contain all findings needed to properly evaluate her disability. 38 C.F.R. § 4.2 (2015). The Board also finds no credible lay or medical evidence demonstrating or alleging an increased severity of the disability since the most recent VA examination in March 2014. Thus, there is no duty to provide another examination. See VAOPGCPREC 11-95 (Apr. 7, 1995).

In Bryant v. Shinseki, 23 Vet. App. 488 (2010), the Court held that 38 C.F.R. § 3.103(c)(2) requires that the Veterans Law Judge (VLJ) who conducts a hearing fulfill two duties to comply with the above regulation. These duties consist of (1) the duty to fully explain the issues and (2) the duty to suggest the submission of evidence that may have been overlooked. In March 2016, the Federal Circuit ruled in Dickens v. McDonald, 814 F.3d 1359 (Fed. Cir. 2016) that a Bryant hearing deficiency was subject to the doctrine of issue exhaustion as laid out in Scott, 789 F.3d at 1375. Because the Veteran has not raised a potential Bryant problem in this appeal, no further discussion of Bryant is necessary. Given the foregoing, the Board concludes that all reasonable efforts were made by the VA to obtain evidence necessary to substantiate the Veteran's claim and no further assistance is required.

Higher Initial Rating Claim

Disability evaluations are determined by the application of a schedule of ratings which is based on the average impairment of earning capacity in civil occupations. Separate DCs identify the various disabilities. See 38 U.S.C.A. § 1155; 38 C.F.R. § Part 4 (2015).

Where a Veteran appeals the initial rating assigned for a disability at the time that service connection for that disability is granted, evidence contemporaneous with the claim and with the initial rating decision granting service connection would be most probative of the degree of disability existing at the time that the initial rating was assigned and should be the evidence "used to decide whether an original rating on appeal was erroneous." See Fenderson v. West, 12 Vet. App. 119, 126-127 (1999). If later evidence indicates that the degree of disability increased or decreased following the assignment of the initial rating, "staged" ratings may be assigned for separate periods of time based on facts found. Id.

The Veteran currently is in receipt of a zero percent (noncompensable) disability rating under 38 C.F.R. § 4.118, DC 7813 for her tinea pedis with toenail onychomycosis. 

The Board notes that, during the course of the appeal, the regulations pertaining to the evaluation of the skin were amended, effective October 23, 2008. These regulatory changes only apply to applications received by VA on or after October 23, 2008, or if the Veteran requests review under the revised criteria. See 73 Fed. Reg. 54708 (Sept. 23, 2008). As neither situation applies in this case, the Board finds the 2008 regulatory changes to be inapplicable. Additional regulatory changes were made in 2012 but these changes involved only a correction to the applicability date of the 2008 regulations and did not involve any substantive changes. Thus, they are not pertinent to this appeal. Therefore, the criteria effective prior to October 23, 2008, are the only ones which apply in this case. See 67 Fed. Reg. 49,590-49,599 (July 31, 2002), codified at 38 C.F.R. § 4.118, DC 7800 et seq (effective prior to October 23, 2008).

DC 7813 provides that dermatophysosis is to be rated as disfigurement of the head, face, or neck (DC 7800), scars (DCs 7801, 7802, 7803, 7804, or 7805), or dermatitis (DC 7806), depending upon the predominant disability. 38 C.F.R. 
§ 4.118. 

DC 7800 provided ratings for disfigurement of the head, face, or neck. As the Veteran's service-connected disability applies to her feet, DC 7800 is not applicable. 38 C.F.R. § 4.118.

Under DC 7801, scars, other than those on the head, face, or neck, that are deep or that cause limited motion warrant a 10 percent rating if the area or areas exceed 6 square inches (39 sq. cm). In order for a 20 percent rating to be warranted, the area or areas must exceed 12 square inches (77 square centimeters). Scars, other than those on the head, face, or neck, that were deep or that caused limited motion warrant a 30 percent rating if the area or areas exceeded 72 sq. inches (464 sq. cm.). A 40 percent rating is warranted for scars, other than those on the head, face, or neck, that were deep or that caused limited motion, if the area or areas exceeded 144 sq. inches (929 sq. cm.). A 40 percent rating is the highest schedular disability rating available under this code. Note (1) of DC 7801 stated that scars in widely separated areas, as on two or more extremities or on anterior and posterior surfaces of extremities or trunk, would be separately rated and combined in accordance with 38 C.F.R. § 4.25 (2012). Note (2) associated with this DC specified that a deep scar was one associated with underlying soft tissue damage. 38 C.F.R. § 4.118, DC 7801.

Under DC 7802, scars, other than those on the head, face, or neck, that are superficial and that do not cause limited motion warrant a 10 percent rating if the area or areas exceed 144 square inches (929 sq. cm.). A 10 percent rating is the maximum schedular rating available under DC 7802. 38 C.F.R. § 4.118.

DC 7803 provides a 10 percent rating for a superficial unstable scar. A 10 percent rating is the maximum schedular rating available under DC 7803. 38 C.F.R. § 4.118.

DC 7804 provides for a single maximum 10 percent disability rating where a superficial scar is painful on examination. A Note associated with this DC specified that superficial scars are those not associated with underlying soft tissue damage. 38 C.F.R. § 4.118. 

Under DC 7805, the rater was instructed to rate the scar based on the limitation of function of the affected part. 38 C.F.R. § 4.118. 

Under DC 7806, dermatitis or eczema that involves at least 5 percent, but less than 20 percent, of the entire body or exposed areas are affected, or requires intermittent systemic therapy such as corticosteroids or other immunosuppressive drugs for a total duration of less than six weeks during the past 12-month period, warrants a 10 percent disability rating. Dermatitis or eczema that involves 20 to 40 percent of the entire body or 20 to 40 percent of exposed areas affected, or; systemic therapy such as corticosteroids or other immunosuppressive drugs required for a total duration of six weeks or more, but not constantly, during the past 12-month period, is rated 30 percent disabling. Dermatitis or eczema that involved more than 40 percent of the entire body or more than 40 percent of exposed areas affected, or; constant or near-constant systemic therapy such as corticosteroids or other immunosuppressive drugs required during the past 12-month period, was rated 60 percent disabling. A 60 percent rating was the maximum schedular rating available under this Code. 38 C.F.R. § 4.118.

Recently, the United States Court of Appeals for Veterans Claims (Court), in Johnson v. McDonald, No. 14-2778 (U.S. Vet. App. Mar. 1, 2016), found that the use of systemic therapy, such as corticosteroids or other immunosuppressive drugs, as described by the criteria under 38 C.F.R. § 4.118, DC 7806, is inclusive of topical corticosteroids. The Court held that the "topical therapy" identified in the noncompensable rating criteria necessarily referred to "non-corticosteroid" topical treatment. Johnson, No. 14-2778 (U.S. Vet. App. Mar. 1, 2016). 

In Warren v. McDonald, No. 13-3161 (U.S. Vet. App. May 10, 2016), the Court, citing Mauerhan v. Principi, 16 Vet. App. 436, 442 (2002), found that "because 'systemic therapy,' which is the type of therapy that creates compensability, is connected to the phrase "corticosteroids or other immunosuppressive drugs" by "such as," those drug types do not constitute an exhaustive list of all compensable systemic therapies, but rather serve as examples of the kind and degrees of treatments used to justify a particular disability rating." The Court held that "systemic therapy such as corticosteroids or other immunosuppressive drugs" is not inclusive of all systemic therapies, including the treatment that the claimant was using for his skin disability (oral Lamisil). Id. The Court found that, under 38 C.F.R. § 4.118, DC 7806, compensation is available for all systemic therapies that are "like or similar to" corticosteroids or other immunosuppressive drugs. Warren, No. 13-3161 (U.S. Vet. App. May 10, 2016). The Court found that there was evidence in the record that Lamisil was a systemic therapy. To further bolster its point, the Court pointed out in a footnote that VA's Adjudication Procedures Manual (M21) defined a systemic treatment like or similar to a corticosteroid or other immunosuppressive drug to be "any oral or parenteral medication(s) prescribed by a medical professional to treat the underlying skin disorder." M21-1MR, Part III, subpt. IV, ch. 4, sec. J(3)(f); Warren, No. 13-3161 (U.S. Vet. App. May 10, 2016). The M21 states that medications that are applied topically (directly to the skin) (with the exception of topical corticosteroids as described above in Johnson) are not considered systemic for VA purposes. M21-1 MR, Part III, subpt. IV, ch. 4, sec. J(3)(f). 

As provided by 38 C.F.R. § 19.5 (2015), the Board, in its consideration of appeals, "is bound by applicable statutes, regulations of the Department of Veterans Affairs, and precedent opinions of the General Counsel of the Department of Veterans Affairs. The Board is not bound by Department manuals, circulars, or similar administrative issues;" however, the Manual can provide useful guidance for the Board. See also 38 U.S.C. § 7104(c) (West 2014).

Analysis

The Board finds that the Veteran is entitled to an initial 10 percent rating for tinea pedis with toenail onychomycosis effective from August 14, 2006 (the date service connection was granted), to March 3, 2008. Specifically, there is evidence of the Veteran's toenails being painful upon examination which warrants a 10 percent disability rating under DC 7804. 38 C.F.R. § 4.118. In an August 2006 private treatment record, the Veteran reported painful feet and the physician noted that the Veteran had mild tenderness of her toes. In a March 2007 statement, the Veteran's friend stated that the Veteran's toes experienced numbness. In a March 2007 statement, the Veteran indicated that her feet hurt. At the April 2007 VA examination, the Veteran reported daily numbness of his toes and itchiness underneath his current toenails due to the fact that her toenails were previously removed as a form of treatment. Thus, in giving the Veteran the benefit of the doubt, the Board finds that the Veteran is entitled to an initial compensable disability rating of 10 percent for her tinea pedis with toenail onychomycosis from August 14, 2006, the effective date of service connection, to March 3, 2008. The evidence of record establishes that the Veteran's toenails are painful upon examination which warrants a 10 percent disability rating under DC 7804 from August 14, 2006, to March 3, 2008. 38 C.F.R. § 4.118. 

An initial rating greater than 10 percent is not warranted for tinea pedis with toenail onychomycosis at any time from August 14, 2006, to March 3, 2008. The Veteran already is in receipt of the maximum schedular disability rating of 10 percent available under DC 7802 and 7804 during this time period. 38 C.F.R. § 4.118. The Veteran is not entitled to a higher disability rating under DC 7801 or 7805 as the evidence does not establish that her tinea pedis with toenail onychomycosis was deep or caused limitation of motion of the feet during this period. 38 C.F.R. § 4.118. These symptoms were not noted at the April 2007 VA examination or in other treatment records dated during this period. For instance, the April 2007 VA examiner found that the discoloration of the toenails appeared superficial. 

Under DC 7806, a higher 30 percent rating is not warranted during this time period because the evidence of record does not establish that the Veteran's tinea pedis with toenail onychomycosis involved 20 to 40 percent of the entire body or 20 to 40 percent of exposed areas affected, or; systemic therapy such as corticosteroids or other immunosuppressive drugs required for a total duration of six weeks or more, but not constantly, during this period. 38 C.F.R. § 4.118. At the April 2007 VA examination, the Veteran denied the use of oral antifungal medication in the past 12 months. The Veteran reported the constant use of topical cream daily on her feet and the use of athlete's foot powder in the past 12 months. The VA examiner determined that these treatments were not a corticosteroid or an immunosuppressive. The treatment records dated during this period do not provide contrary evidence to that obtained at the VA examination. The M21 states that medications that are applied topically (directly to the skin) (with the exception of topical corticosteroids as described above in Johnson) are not considered systemic for VA purposes. M21-1 MR, Part III, subpt. IV, ch. 4, sec. J(3)(f). In Johnson, No. 14-2778 (U.S. Vet. App. Mar. 1, 2016), the Court found that the "topical therapy" identified in the noncompensable rating criteria necessarily referred to "non-corticosteroid" topical treatment. Additionally, at the April 2007 VA examination, the VA examiner determined that the Veteran did not have any exposed areas and had less than 5 percent of total body area affected. Thus, an initial rating greater than 10 percent is not warranted at any time from August 14, 2006, to March 3, 2008, for the Veteran's service-connected tinea pedis with toenail onychomycosis. 38 C.F.R. § 4.118. 

The Board next finds that the Veteran is entitled to an initial 60 percent rating for tinea pedis with toenail onychomycosis from March 4, 2008, to March 9, 2013. Specifically, there is evidence of constant or near-constant systemic therapy such as corticosteroids or other immunosuppressive drugs required for the treatment of the Veteran's tinea pedis with toenail onychomycosis during this time period, which warrants a 60 percent disability rating under DC 7806. 38 C.F.R. § 4.118. At the March 4, 2009, VA examination, the Veteran reported the use of hydrocortisone cream three to four times weekly for the past 12 months (i.e., since March 4, 2008). Hydrocortisone is a topical corticosteroid and a systemic therapy. See DORLAND'S ILLUSTRATED MEDICAL DICTIONARY; see also Johnson, No. 14-2778 (U.S. Vet. App. Mar. 1, 2016). The Board finds that the use of the topical corticosteroid three to four times weekly is representative of near constant use, which warrants a 60 percent rating under DC 7806. Additionally, in a May 2012 private treatment record, the Veteran was prescribed the oral medication Lamisil for the treatment of her tinea pedis with toenail onychomycosis. As stated in Warren, Lamisil is a systemic therapy as contemplated under DC 7806. See also M21-1MR, Part III, subpt. IV, ch. 4, sec. J(3)(f). At her March 2011 Board hearing, the Veteran testified to the prior use of steroids to treat her tinea pedis with toenail onychomycosis. Thus, the evidence establishes that the Veteran's tinea pedis with toenail onychomycosis has required near-constant systemic therapy, which warrants a 60 percent disability rating under DC 7806 from March 4, 2008, to March 9, 2013. 38 C.F.R. § 4.118. A 60 percent rating is the maximum schedular disability rating under DC 7806, and the other skin DCs do not provide ratings higher than 60 percent. 38 C.F.R. § 4.118. 

The Board finally finds that the Veteran is entitled to an initial 10 percent rating for tinea pedis with toenail onychomycosis effective March 10, 2013. Specifically, there is evidence of the Veteran's toenails being painful upon examination which warrants a 10 percent disability rating under DC 7804. 38 C.F.R. § 4.118. In a January 2014 private treatment record, the Veteran reported painful feet. In a February 2014 statement, the Veteran's mother stated that the Veteran's toes cause her pain. In a March 2014 statement, the Veteran reported constant chronic pain of her feet and stated that it was very painful to wear closed toe shoes. Thus, in giving the Veteran the benefit of the doubt, the Board finds that the Veteran is entitled to an initial 10 percent rating for tinea pedis with toenail onychomycosis effective March 10, 2013. The evidence of record establishes that the Veteran's toenails are painful upon examination, which warrants a 10 percent disability rating under DC 7804. 38 C.F.R. § 4.118. 

An initial rating greater than 10 percent is not warranted for the Veteran's service-connected tinea pedis with toenail onychomycosis at any time since March 10, 2013. The Veteran already is in receipt of the maximum schedular disability rating of 10 percent available under DC 7802 and 7804 during this time period. 38 C.F.R. § 4.118. The Veteran is not entitled to a higher rating under DC 7801 or 7805 as the evidence does not establish that her tinea pedis with toenail onychomycosis is deep or causes limitation of motion of the feet since March 10, 2013. 38 C.F.R. § 4.118. At the March 10, 2014, VA examination, and in other treatment records dated since March 10, 2013, these symptoms were not documented. More importantly, the Veteran has not alleged that she experiences such symptoms. For instance, at the March 2014 VA examination, the VA examiner found that the Veteran did not have any functional impairment in her ability to walk without pain at a steady gait. The examiner found that that the Veteran's tinea pedis with toenail onychomycosis would not interfere with her employability or her ability to perform her activities of daily living. 

Under DC 7806, a higher 30 percent rating is not warranted for the Veteran's service-connected tinea pedis with toenail onychomycosis effective March 10, 2013, because the evidence of record does not establish that this disability involves 20 to 40 percent of the entire body or 20 to 40 percent of exposed areas affected, or; systemic therapy such as corticosteroids or other immunosuppressive drugs required for a total duration of six weeks or more, but not constantly, since March 10, 2013. 38 C.F.R. § 4.118. At the March 10, 2014, VA examination, the Veteran reported the use of oral antifungals, such as Lamisil, oral steroids, and topical creams previously; however, in the past 12 months, she had only used over-the-counter creams and had not taken any pills. The VA examiner found that the Veteran had been treated with topical medications (over-the-counter antifungal cream) in the past 12 months. The Veteran had used this medication for 6 weeks or more but not constantly. The Veteran did not have any other treatments or procedures performed in the past 12 months for her tinea pedis with toenail onychomycosis. The examiner found that the Veteran had been prescribed systemic antifungals and steroids in the past but not in the past 12 months. Accordingly, effective March 10, 2013 (12 months prior to the March 10, 2014, VA examination), the Veteran had not been prescribed systemic therapy for the treatment of her tinea pedis with toenail onychomycosis. At the March 10, 2014, VA examination, the Veteran was being treated with topical creams only. As noted elsewhere, the M21 states that medications that are applied topically (directly to the skin) (with the exception of topical corticosteroids as described above in Johnson) are not considered systemic for VA purposes. M21-1 MR, Part III, subpt. IV, ch. 4, sec. J(3)(f). In Johnson, No. 14-2778 (U.S. Vet. App. Mar. 1, 2016), the Court found that the "topical therapy" identified in the noncompensable rating criteria necessarily referred to "non-corticosteroid" topical treatment. The examiner also determined that the Veteran's tinea pedis with toenail onychomycosis was less than 5 percent of her total body area and did not involve any exposed area. The treatment records dated since March 10, 2013, do not provide any evidence contrary to that obtained at the VA examination. Thus, the Veteran is not entitled to an initial rating greater than 10 percent for tinea pedis with toenail onychomycosis effective March 10, 2013. 38 C.F.R. § 4.118.

The Board notes that in adjudicating a claim, the competence and credibility of the Veteran, her mother, and her friend must be considered. See Buchanan v. Nicholson, 451 F.3d 1331 (Fed. Cir. 2006); Washington v. Nicholson, 19 Vet. App. 362, 368-69 (2005). The Board acknowledges that the Veteran, her mother, and her friend are competent to give evidence about what they observe or experience. For example, the Veteran is competent to report that she experiences certain symptoms, such as pain, and she is credible in this regard. See, e.g., Layno v. Brown, 6 Vet. App. 465 (1994). The lay statements of record suggesting that the Veteran's disability is worse than the assigned disability ratings are outweighed by the competent and credible medical examinations that evaluated the true extent of impairment based on objective data coupled with the lay complaints of the Veteran herself. The VA examiners have the training and expertise necessary to administer the appropriate tests for a determination on the type and degree of the impairment associated with the Veteran's complaints. For these reasons, greater evidentiary weight is placed on the physical examination findings than the lay statements of record. Also, as stated above, the rating criteria are specific in indicating that some of the criteria must be objectively demonstrated. 

In summary, the Board finds that the schedular criteria for an initial 10 percent rating, and no higher, for the Veteran's service-connected tinea pedis with toenail onychomycosis have been met from August 14, 2006, to March 3, 2008. The schedular criteria for an initial 60 percent rating, and no higher, for the Veteran's service-connected tinea pedis with toenail onychomycosis have been met from March 4, 2008, to March 9, 2013. Finally, the schedular criteria for an initial 10 percent rating, and no higher, for the Veteran's service-connected tinea pedis with toenail onychomycosis have been met effective March 10, 2013. 

Extraschedular Considerations

Pursuant to 38 C.F.R. § 3.321(b)(1) (2015), the Director, Compensation Service, is authorized to approve an extraschedular evaluation if the case "presents such an exceptional or unusual disability picture with such related factors as marked interference with employment or frequent periods of hospitalization as to render impractical the application of the regular schedular standards." 38 C.F.R. § 3.321(b)(1). The question of an extraschedular rating is a component of a claim for an increased rating. See Bagwell v. Brown, 9 Vet. App. 337, 339 (1996). Although the Board may not assign an extraschedular rating in the first instance, it must adjudicate whether to refer a case for extraschedular evaluation when the issue either is raised by the claimant or is reasonably raised by the evidence of record. Barringer v. Peake, 22 Vet. App. 242 (2008). 

If the evidence raises the question of entitlement to an extraschedular rating, then the threshold factor for extraschedular consideration is a finding that the evidence before VA presents such an exceptional disability picture that the available schedular evaluations for that service-connected disability are inadequate. Therefore, initially, there must be a comparison between the level of severity and symptomatology of a Veteran's service-connected disability with the established criteria found in the rating schedule for that disability. Thun v. Peake, 22 Vet. App. 111 (2008). 

If the criteria reasonably describe the claimant's disability level and symptomatology, then a Veteran's disability picture is contemplated by the rating schedule. The assigned schedular evaluation is, therefore, adequate, and no referral is required. In the second step of the inquiry, however, if the schedular evaluation does not contemplate the claimant's level of disability and symptomatology, and is found inadequate, the AOJ or Board must determine whether the claimant's exceptional disability picture exhibits other related factors such as those provided by the regulation as "governing norms." 38 C.F.R. 3.321(b)(1) (related factors include "marked interference with employment" and "frequent periods of hospitalization"). 

Here, because the schedular ratings for the Veteran's tinea pedis with toenail onychomycosis fully address her symptoms, which include mainly pain, numbness, itching, and topical and oral medications, referral for consideration of an extraschedular evaluation is not warranted. A comparison between the level of severity and symptomatology of the tinea pedis with toenail onychomycosis with the established criteria shows that the rating criteria reasonably describe the Veteran's disability levels and symptomatology. Specifically, this disability was evaluated under 38 C.F.R. § 4.1118, DCs 7804, 7806, 7813. The Board finds that these criteria specifically contemplate the Veteran's levels of disability and symptomatology. At the March 2009 VA examination, it was noted that the Veteran's condition did not cause any impairment in her activities of daily living or her employability. During her March 2011 Board hearing, the Veteran testified that she experienced occupational impairment, including having missed some 4 to 5 weeks of work due to treatment for her foot condition. Accordingly, the Veteran was afforded another VA examination in March 2014. At the March 2014 VA examination, the VA examiner determined that there was no functional impairment in the Veteran's ability to walk without pain at a steady gait. The examiner also found that the Veteran's tinea pedis with toenail onychomycosis would not interfere with her employability or her activities of daily living. 

The Board finds that the Veteran's current functional impairment is contemplated under her current schedular ratings which consider the Veteran's pain and her current treatment for her symptoms. When comparing this disability picture with the symptoms contemplated by the Schedule, the Board finds that the Veteran's symptoms are more than adequately contemplated by her current disability ratings. The criteria for her current schedular ratings more than reasonably describe the Veteran's disability levels and symptomatology. There is no credible evidence that the Veteran's service-connected disability causes impairment which is not contemplated by the scheduler rating criteria or that renders impractical the application of the regular scheduler standards. See Thun, 22 Vet. App. at 111. Accordingly, referral of this case for consideration of an extraschedular rating is not warranted. Id.; see also Bagwell v. Brown, 9 Vet. App. 337 (1996); Floyd v. Brown, 9 Vet. App. 88 (1996). 

Further, the Board notes that under Johnson v. McDonald, 762 F.3d 1362 (Fed. Cir. 2014), a Veteran may be awarded an extraschedular rating based upon the combined effect of multiple conditions in an exceptional circumstance where the evaluation of the individual conditions fails to capture all the service-connected disabilities experienced. In this case, even after applying the benefit of the doubt under of Mittleider v. West, 11 Vet. App. 181 (1998), there are no additional service-connected disabilities that have not been attributed to a specific service-connected condition. Accordingly, this is not an exceptional circumstance in which extraschedular consideration may be required to compensate the Veteran for a disability that can be attributed only to the combined effect of multiple conditions. 

ORDER

Entitlement to an initial 10 percent rating from August 14, 2006, to March 3, 2008, an initial 60 percent rating from March 4, 2008, to March 9, 2013, and an initial 10 percent rating thereafter for tinea pedis with toenail onychomycosis is granted.

____________________________________________
MICHAEL T. OSBORNE
Acting Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs